Charles Marks, J.
Motion by defendant American Trust Company (American) pursuant to CPLR 3211 (subd. [a], par. 7) to dismiss the second amended complaint for failure to state a cause of action is granted. The facts asserted by the plaintiff for seeking recovery of $562,354.36 based upon two causes of action sounding in “ gross negligence amounting to commercial bad faith ” are as follows:
During the 18-month period of June, 1962, through December, 1963, one of plaintiff’s employees, William Seorca, prepared and signed 123 checks drawn on plaintiff’s account on the Bank of New York in the aggregate sum of $562,354.36. All of these checks were countersigned by another of plaintiff’s employees also authorized to sign checks on its behalf and were made payable to one Oscar Rosenfeld. All of said checks were indorsed with the names “ Oscar Rosenfeld ” and “ Morris Rosen ” and “ cashed ” by American with whom one William Peck, using the false name of Morris Rosen, had opened a checking account in June, 1962. After the checks were so cashed they were presented to the Bank of New York which then paid same to American following which plaintiff’s account was debited with the amount thereof and the cancelled checks returned to the plaintiff.
In the first cause of action plaintiff alleges that American was so grossly negligent and careless as to constitute “ commercial bad faith ’ ’ in that American cashed such checks without inquiring as to the payee, the indorsers, its depositor or into the facts and circumstances surrounding the issuance of the checks and this despite the fact that such checks were for large amounts and in odd sums. Plaintiff further alleges that had American made such inquiry the checks would not have been cashed and plaintiff would have been in a position to detect and halt Scorca’s fraudulent scheme. The second cause of action realleges the same material facts and adds that American disregarded an alleged banking custom and practice not to cash or accept for deposit a check bearing two or more indorsements unless the particular circumstances respecting the check or the financial standing of the person presenting same for payment are known to the bank.
American moves to dismiss the second amended complaint on the grounds that the facts alleged therein, insofar as material, are in all respects identical with those of the first amended complaint heretofore dismissed at Special Term (47 Misc 2d 694, Geller, J.) by order dated June 23,1965, and, alternatively, that such facts do not give rise to a meritorious cause of action for *316 seeking recovery by a drawer from a collecting bank on tire basis of the latter’s alleged negligence.
Plaintiff initially contends that its present pleading is drawn to conform with the prior order at Special Term and that this court is therefore powerless to hold such pleading insufficient. Such a contention is completely untenable (Donohue v. First Trust Co. of Albany, 286 App. Div. 918).
Plaintiff’s basis for seeking recovery herein is not only contradicted by the facts but by the applicable court decisions. In its second amended complaint plaintiff, asserts that the 123 checks were presented and cashed at American’s Wall Street office. By this allegation plaintiff seeks firstly, to impose upon American the status of a holder in due course (Negotiable Instruments Law, § 91) and then establish that it lost such status by reason of its failure to make the inquiry which the peculiar facts and circumstances of this case mandated (Negotiable Instruments Law, §§ 91, 95).
American’s moving papers establish that of the 27 checks alleged by the plaintiff to have been issued pursuant to Scorca’s fraudulent scheme during the months of May and June, 1963, 23 of such checks were in fact deposited into the Peck-Bosen account. Accordingly vis-a-vis such checks American was merely a collecting agent acting on behalf of its depositor and not a holder in due course (cf. Kinstlinger v. Manufacturers Trust Co., 280 App. Div. 729, 732). Plaintiff does not refute American’s facts but rather seeks to avoid the dismissal of its causes of action on the ground that American has failed to prove that the remaining 100 checks were likewise deposited. American having come forward with evidence to sustain its position, the burden was on the plaintiff to come forward with evidentiary facts to sustain the allegations of its complaint that all of the checks were cashed (CPLB 3211, subd. [e]). Bald conclusory allegations and statements of suspicions and surmises do not suffice to meet this burden (Manufacturers & Traders Trust Co. v. Sapowitch, 296 N. Y. 226; cf. Overseas Credit Corp. v. Cal-Tech Systems, 20 A D 2d 355, 358, affd. 14 N Y 2d 909) wherein the court stated: ‘ ‘ On this basis defendant established no more than suspicious circumstances as distinguished from facts that brought home to plaintiff either knowledge or a duty to make further inquiry. Suspicious circumstances alone do not constitute notice of an infirmity or defect in the instrument sufficient to constitute bad faith and destroy the status of holder in due course (Negotiable Instruments Law, § 95).”
Furthermore the case law in this jurisdiction supports American’s contention that absent a defect appearing on the face of *317 the instrument, a drawer may not recover the amount of said instrument from a collecting bank on the ground that the latter was guilty of negligence or gross negligence; recovery, if any, must be sought from the drawee bank (Trojan Pub. Corp. v. Manufacturers Trust Co., 273 App. Div. 843, affd. 298 N. Y. 771; General Fire Assur. Co. v. State Bank, 177 App. Div. 745). The cases cited by plaintiff are inapposite, relying either upon a claim of conversion by the collecting bank or a defect appearing upon the face of the instrument, or both. Plaintiff’s causes of action in conversion have heretofore been dismissed at Special Term. Furthermore, while plaintiff concedes that the checks herein were regular upon their face it would, nevertheless, impose a duty upon a collecting bank to go behind the instruments and inquire into the facts and circumstances surrounding their issuance. Moreover, plaintiff would seek to impose such a duty upon defendant and, at the same time, maintain that it Avas under no obligation to discover its employee’s fraudulent scheme which, to achieve its success, required countersignatures of plaintiff’s officers on the 123 checks. Such checks, when returned to the plaintiff by its draAvee, contained all of the information (i.e., payee’s name and the double indorsement) which plaintiff claims to have imposed a duty of inquiry on American. It may fairly be inferred from plaintiff’s allegations that had it properly examined these checks upon their cancellation and return and had due inquiry been made both internally and of American, its employee’s scheme AAmuld have been quickly uncovered and terminated. The simple answer to plaintiff’s position is that the law imposes no such duty on one accepting a negotiable instrument for collection on behalf of a depositor (Negotiable Instruments Law, § 350-d).
CPLR 3211 (subd. [e]) requires plaintiff, in opposing a motion to dismiss, to affirmatively seek leave to replead in the event the motion is granted. In such event plaintiff is required to set forth “ evidence that could properly be considered on a motion for summary judgment in support of a new pleading.” Plaintiff herein has neither sought leave to replead nor has it complied Avith the aforesaid statutory provision. Accordingly the second amended complaint is dismissed, without leave to replead.