Chief Judge Cooke,
(concurring). To permit a drawee bank to avoid liability for paying a check on a forged indorsement by asserting the “fictitious payee” rule, when the bank itself may have acted negligently in paying the check, is a harsh result. Inasmuch as section 3-405 of the Uniform Commercial Code does not include any requirement that a bank act with ordinary care, however, I am constrained to concur in the majority’s result.
As a general rule, a forged indorsement is wholly inoperative and ineffective to negotiate an instrument (see Uni-, form Commercial Code, § 3-404, subd [11). Consequently, the item is not properly payable and the drawer’s account may not be charged (see Uniform Commercial Code, § 4-401, subd [11; Harbus, The Great Pretender — A Look at the Impostor Provision of the Uniform Commercial Code, 47 U Cin L Rev 385, 387).
In two instances, the general rule is limited when the drawer has acted negligently, and the drawee has not. The drawer may be charged if its negligence has substantially contributed to the making of the unauthorized signature and the drawee has paid the instrument in good faith and in accordance with reasonable commercial standards (see Uniform Commercial Code, § 3-406). Similarly, the drawee is protected if it has acted reasonably and the drawer fails *449 to discover the wrongful payments by not examining its bank statement with reasonable care and promptness (see Uniform Commercial Code, § 4-406).
Another exception to the general rule is created by section 3-405. That statute, at issue here, provides that an indorsement by any person is effective when the check is issued to an imposter or when the named payee was not actually intended to have any interest in the item (see Uniform Commercial Code, § 3-405, subd [1]). Unlike sections 3-406 and 4-406, however, section 3-405 does not prescribe any standard to be applied to a drawee’s conduct.
Questions have been raised as to the scope of section 3-405. It is unsettled whether it validates certain signatures for all purposes or only for the limited purpose of permitting negotiability (see Harbus, op. cit., at pp 390-394; Comment, The Effect of Bank Misconduct on the Operation of the Padded Payroll Preclusion of U.C.C. § 3-405, 27 UCLA L Rev 147, 160-161). Thus, it has been suggested that the warranty provisions of section 3-417 should apply (see Harbus, op. cit., at pp 390-393) and that a transferee should be denied holder-in-due-course status when an irregularity on the item’s face gives notice of some defect in the instrument (see Comment, op. cit., at pp 165-170).
The central rationale of section 3-405 is that an employer is in the best position to institute controls to guard against employees’ fraudulently obtaining checks and so should bear the loss when this occurs (see Uniform Commercial Code, § 3-405, Official Comment 4). The soundness of the reasoning of this conceded “ ‘banker’s provision’ ” (p 445) has been questioned by this court (see Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A., 46 NY2d 459, 468) and commentators (see Harbus, op. cit.; Comment, op. cit.). Its particular hardship becomes clearer when the drawee bank is itself negligent. In a padded payroll situation such as here, the drawer may well not be negligent at all, but rather is the victim of an employee’s criminal act (see Harbus, op. cit., at p 409). Yet, the negligent bank, which in other situations may be held liable notwithstanding the drawer’s negligence (see Uniform Commercial Code, §§ 3-406, 4-406), will be totally exonerated regardless of its own carelessness because the *450 drawer was duped by an employee (see Harbus, op. cit.). “Th[e] principle [of Comment 4] exemplifies a reasonable commercial policy if all parties are innocent; it seems quite unfair if the bank has not acted in a commercially reasonable manner. It allows a negligent party to escape from the ordinary consequences of its negligence.” (Harbus, op. cit., at p 409.) The “rules of 3-405 [should be considered] to be first cousins of the rules in 3-406 and 4-406, and * * * a customer [should be allowed] to prove a drawee’s negligence and, having proved it, to assert the forged indorsement.” (White & Summers, Uniform Commercial Code [2d ed], § 16-8, p 639.)
Plaintiff here is not attempting to controvert directly the effectiveness of the forged corporate indorsements for negotiating the items. Rather, it argues that the appearance of the indorsements was such as to put defendant on notice of the checks’ irregularity. To subsume this issue within that of the effectiveness of the indorsements (see p 447) condones cashing checks with dubious indorsements (cf. Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A., supra, at p 468 [“the drawer is thus precluded from recovering solely on the basis of the forgery from banks which honor the check” (emphasis added)]).
There is no sound reason why a drawee should be absolved of all duty to exercise reasonable care merely because a check was obtained by a drawer’s defrauding employee. The large volume of daily business cannot explain this, inasmuch as the,burden is placed on the drawee in other situations. Nor is consistency among the States a compelling reason. Two courts in this State have held that a drawee must exercise reasonable care before obtaining the protection of section 3-405 (see Titan Air Conditioning Corp. v Chase Manhattan Bank, N.A., 61 AD2d 764; Board of Higher Educ. v Bankers Trust Co., 86 Misc 2d 560), as have courts in at least two other States (see Wright v Bank of Cal. Nat. Assn., 276 Cal App 2d 485; Pacific Ind. Co. v Security First Nat. Bank, 248 Cal App 2d 75; Frost Nat. Bank of San Antonio v Nicholas & Barrera, 500 SW2d 906 [Tex]).
Unless displaced by the provisions of the Uniform Commercial Code, traditional principles of law and equity are *451 expressly reserved (see Uniform Commercial Code, § 1-103). On the record before this court, it cannot be said that, as a matter of law, checks bearing handwritten, often illegible, corporate indorsements in blank with third-party indorsements of unrelated persons or entities in States far removed from the payees’ addresses are not such as would give notice of the item’s irregularity to the drawee. This is especially true of those checks that were deposited later than the 60-day limitation printed on their fronts. Certainly, this is not a question to be resolved by Judges on a motion for summary judgment, but one that should be left to the trial court.
Construing section 3-405 in the same manner as sections 3-406 and 4-406 would not shift the loss on all impostor/fietitious-payee checks to the drawee. Section 3-405 should be recognized as the exception it is, however, and applied narrowly (see White & Summers, op. cit.). When the indorsement is in a form that would not arouse suspicion, it would be effective to negotiate the check. If, however, the form of the impostor’s or fictitious payee’s indorsement is such that, under any other circumstances, it would raise a question as to the item’s validity or regularity, the drawee’s conduct would be scrutinized and, if found to be negligent, the drawee charged with the forged indorsement.
Having said all this, I must join the majority in reversing the order of the Appellate Division. The absence of a standard of care in section 3-405 must be deemed an intentional omission by the Legislature in light of its ability to include such language when it desires, as manifested by sections 3-406 and 4-406. This court should not require ordinary care by the drawee when the Legislature has declined to do so (see Matter of Carmelo E., 57 NY2d 431; Reigert Apts. Corp. v Planning Bd. of Town of Clarkstown, 57 NY2d 206; Holt v County of Tioga, 56 NY2d 414, 424-425 [Cooke, Ch. J., dissenting]). Instead, section 3-405 should be amended to preclude its invocation by a drawee or other transferee who has failed to exercise due care (see Harbus, op. cit., at p 415).
*452 Judges Jasen, Gabrielli, Jones and Meyer concur with Judge Fuchsberg; Chief Judge Cooke concurs in a separate opinion in which Judge Wachtler concurs.
Order, insofar as appealed from, reversed, with costs, and defendant’s motion for partial summary judgment granted. Question certified answered in the negative.